UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| YVONNE M. ABHYANKAR, | : | |
| BY KASHI BEHRSTOCK, AS AGENT, AND | : | 18-cv-9411 (PKC) |
| KASHI BEHRSTOCK, | : | |
| | : | |
| Plaintiffs, | : | PLAINTIFFS' RESPONSES TO |
| | : | DEFENDANTS' FIRST SET OF |
| -against- | : | INTERROGATORIES |
| | : | |
| JPMORGAN CHASE & CO., | : | |
| JPMORGAN CHASE BANK, N.A., | : | |
| | : | |
| Defendants. | | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, and all other applicable law, Plaintiff Yvonne M. Abhyankar by Kashi Behrstock, as agent ("Plaintiff Abhyankar"), and Kashi Behrstock ("Plaintiff Behrstock" and collectively, "Plaintiffs"), by and through their attorney, Daniel J. Reiter, Esq., respond to Defendants' JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. (collectively, "Defendants" or "Chase") first set of interrogatories (the "Interrogatories") as follows:

## GENERAL OBJECTIONS

1. Plaintiffs object to the extent that the Interrogatories exceed the scope of the relevant subject matter permitted pursuant to Local Civil Rule 33.3.

## SPECIFIC RESPONSES TO INTERROGATORIES

**Interrogatory No. 1**

Identify all persons who have knowledge or information concerning the subject matter of this action, including, without limitation, the allegations set forth in the Complaint.

**Response to Interrogatory No. 1**

Plaintiff Behrstock answers as follows: Those with first-hand knowledge, in addition to the individuals identified in the Complaint and their agents, are my brother Hari Abhyankar, and my husband, Jason Behrstock.

**Interrogatory No. 2**

For each individual identified in Your response to the previous Interrogatory, describe in detail the factual knowledge You believe each person has and the basis for such belief.

**Response to Interrogatory No. 2**

Plaintiff Behrstock answers as follows: Hari Abhyankar and Jason Behrstock are not in possession of any factual information that is unknown to me. Both Hari Abhyankar and Jason Behrstock were on some of the phone calls I made to Chase. Jason Behrstock has reviewed all documents produced to Defendants in this matter. On information and belief neither Hari Abhyankar nor Jason Behrstock possess any information about this matter that I am not already aware of.

**Interrogatory No. 3**

Identify all written materials or documents that relate to or bear upon the facts of this case or any of the allegations or matters asserted in the Complaint, including, without limitation, the location and custodian(s) of such materials and/or documents.

**Response to Interrogatory No. 3**

Plaintiffs object to the extent that the scope of Interrogatory No. 3 is not proportional to the amount in controversy. Plaintiffs further object to Interrogatory No. 3 to the extent that Plaintiffs have produced, or shall produce, all discoverable documentation in response to all of Defendants' discovery requests. Subject to these objections, Plaintiff Behrstock answers as follows: Most if not all of the documentation relevant to this matter is stored on Plaintiff Abhyankar's computer, phone, and tablet, which are all in my custody and control.

**Interrogatory No. 4**

Describe in detail the manner in which Plaintiff Behrstock allegedly discovered, on June 5, 2017, that an unknown person or entity had "hacked" into Plaintiff Abhyankar's Chase savings account and transferred $5,299.00 to Plaintiff Abhyankar's Chase checking account and then called Plaintiff Abhyankar and directed her to deposit $5,000.00 in cash into a Bank of America account, as alleged in paragraphs 5-8 of the Complaint.

**Response to Interrogatory No. 4**

Plaintiffs object to Interrogatory No. 4 to the extent that the correct date is June 19, 2017, and not June 5, 2017. Subject to this objection, Plaintiff Behrstock answers as follows: I was in the doctor's office with my mother, Yvonne Abhyankar, on June 19, 2017. My mother was being examined by her oncologist and I was in possession of her phone. My mother's phone was continuously ringing and I answered it thinking that it might be my brother inquiring about my mom's health. Upon answering the phone it quickly became apparent to me that the caller was trying to scam my mother in some way. After my mother's check-up concluded, I asked my mom about the person who had been calling. She informed me that "David Warner" had called her and told her that his company had given her a refund of $299.00 but had accidentally deposited too much, i.e., $5,299.00, into her account. Due to this fact, my mom believed she needed to return $5,000.00 to "David Warner". Once I learned of this information, I immediately called Lorena Meija, my mother's Chase Private Client Account Representative, to inquire as to the status of the $5,000.00. Ms. Meija informed me that she did not see a record involving $5,000.00, but that she did see records of three (3) transactions in the amount of $2,480.00, which Ms. Meija told me had been made two days prior to Western Union. I asked my mother about these transactions. My mother said she had not made any such transactions. I asked Ms. Meija, as she was the representative we had a relationship with

at the local bank branch, if we could go to her office to find out the details of what had transpired. Ms. Meija informed me that she was in the office and that we could come over that same day, which we did. Once in the Chase office, Ms. Meija printed out the transactions that had occurred in my mom's account over the past months. We studied the transactions to understand what had occurred and deduced that two separate incidents of fraudulent transactions that had transpired. First, it appeared to us someone had hacked into my mother's account and transferred $5,299.00 from my mother's savings account to my mother's checking account. Second, someone had used my mother's debit card to transfer money from her Checking account to Western Union.

**Interrogatory No. 5**

Describe in detail the substance of all alleged communications Plaintiff Abhyankar had with the individual(s) who allegedly defrauded her, as alleged in paragraphs 6-8 and 14 of the Complaint.

**Response to Interrogatory No. 5**

Plaintiff Behrstock answers as follows: Handwritten notes from Plaintiff Abhyankar are annexed hereto in response to Interrogatory No. 5. The same are also being produced in electronic format contemporaneously herewith.

**Interrogatory No. 6**

Describe in detail the substance of Plaintiffs' alleged meeting with Lorena Mejia on June 19, 2017, as alleged in paragraphs 9 and 10 of the Complaint.

**Response to Interrogatory No. 6**

Plaintiff Behrstock answers as follows: Lorena Meija and I discussed the fraudulent transactions that had transpired over the past few days when my mother asked if she could be directed to a bathroom. At this time Ms. Meija inquired about my mother's mental state. Ms. Meija had identified potential mental issues of my mother. At this point I asked Ms. Meija what steps the

bank can assist me in undertaking in order to prevent such fraudulent transactions from occurring in the future. Ms. Meija instructed me as follows

a)  to Create a new Chase checking account;

b)  I would be named a secondary owner of the new Chase checking account to give me oversight;

c)  Automated monthly payments from my mother's Chase checking account to her credit card were stopped;

d)  The monthly direct deposit of funds from an account owned by mom at a third-party institution into the Chase checking account was stopped in order to limit the amount of money in the Chase checking account;

e)  With my mother's consent and knowledge, I changed the password on my mother's online banking account to a password only I knew, so that my mom's online account could not be used as a vehicle for further fraud;

f)  Overdraft protection was removed from my mother's Chase checking account; and

g)  A new debit card was issued by Chase that could only make cash withdrawals (and not wire transfers).

Once I was home, I called Western Union to file a complaint in regard to the fraudulent transaction that has occurred. In a few days Ms. Meija called me to let me know that Western Union had refunded the funds.

**Interrogatory No. 7**

Describe in detail any efforts made to discover the identity of the individual(s) who allegedly hacked Plaintiff Abhyankar s Chase accounts and/or allegedly defrauded Plaintiff Abhyankar and induced her into making the Alleged Transfers as alleged in paragraphs 5-9 and 13-14 of the

Complaint.

**Response to Interrogatory No. 7**

Plaintiff Behrstock answers as follows: In June 2017, my husband, Jason Behrstock, and I contacted the New York Police Department and Bank of America. In April 2018 we contacted the Manhattan District Attorney's office, the Internet Crime Complaint Center, Chase, and the New York Police Department.

**Interrogatory No. 8**

Describe in detail Plaintiff Abhyankar's "functional limitations" as alleged in paragraph 10 of the Complaint and, when Plaintiff Behrstock first became aware of Plaintiff Abhyankar's alleged functional limitations.

**Response to Interrogatory No. 8**

Plaintiff Behrstock answers as follows: I first became of aware of my mother's functional limitations on June 19, 2017 when I learned of the financial fraud of which she had fallen victim. Over time it became increasingly clear that she had impaired judgment.

**Interrogatory No. 9**

Identify any doctors or medical providers who have treated Plaintiff Abhyankar and, describe in detail the substance of the treatment, concerning her alleged "functional limitations" referenced in paragraph 10 of the Complaint.

**Response to Interrogatory No. 9**

Plaintiff Behrstock answers as follows: After the fraudulent transaction that transpired in the early part of 2018, I took my mother to have a neurological exam, after which the doctor informed me that she most likely has Alzheimer's or some form of early stage dementia. The doctor prescribed some medicine for the dementia and suggested that I check over her finances and that I should

check that her weekly pill box is full of the correct medicines and that the medicines are being taken as prescribed.

**Interrogatory No. 10**

Identify all communications that Plaintiffs alleged to have had with Chase in which Plaintiffs contend Chase was made aware of Plaintiff Abhyankar's alleged "functional limitations."

**Response to Interrogatory No. 10**

Plaintiff Behrstock answers as follows: During our meeting with Lorena Mejia on June 19, 2017, Ms. Meija directly asked if Plaintiff Abhyankar had functional limitations. During phone calls with Chase on and after April 2018 there was repeated reference to the fact that she was old and that these transactions had been made under some form of duress. I am not certain whether the exact term "functional limitation" was used prior to litigation.

**Interrogatory No. 11**

Identify in detail the substance of the alleged communications between Plaintiff Behrstock and Plaintiff Abhyankar on April 4, 2018, as alleged in paragraph 14 of the Complaint.

**Response to Interrogatory No. 11**

Plaintiff Behrstock answers as follows: I was out of town on vacation on April 4, 2018. I called my mom to say hi and see how she was doing. We were chatting and she asked me to hold on a minute because someone was calling that "had been harassing her." She took the call on the other line and then called me back, I asked who was calling her. She said the person was calling her again and my mom sounded very disturbed. I recognized that there was a problem. I asked my mom for details. She informed me that she had written a check for $47,000.00 and that the person was calling to complain that there was a problem with the check. When I asked for details it became immediately apparent to me that my mom was being harassed and scammed once again. I

immediately called Chase to stop the check. Once I got a representative on the phone, I reported

that $47,000.00 had been transferred from my mom's account to that of an unknown person. At

this point my husband, Jason Behrstock, also spoke to the Chase representative to add further

details as I was to upset to carry on the conversation and, as he was with me at the time he was

filled in on the details by me (during most of the calls on April 4th, we were not yet aware of the

other transactions). Agents at Chase repeatedly transferred us from one representative to another

and also, dropped the call on us several times. We demanded that this transaction should be stopped

because it was made under duress because my mom appeared to me to have been threatened on

the phone. We were repeatedly told to wait and call back the following morning (when this

happened, and the agent disconnected, we would call back to speak to someone else). We were

also told that the transaction had not yet completed.

**Interrogatory No. 12**

Identify all attempts or efforts made any person(s) to have a legal guardian appointed for Plaintiff

Abhyankar or to be appointed as Plaintiff Abhyankar's attorney-in-fact. If no attempts or efforts

were made, identify the reason(s) for not doing so.

**Response to Interrogatory No. 12**

Plaintiff Behrstock answers as follows: NYC Adult Protective Services (APS) sent a representative

to mom's house to assess her situation on April 13, 2018. My mom received a letter from APS on

April 20, 2018 stating "APS has assessed [a]n application submitted by your authorized

representative for protective services....and has determined that you are Ineligible." About seven four

(7) years ago, my mother was very sick and at that time she made a will and made power of attorney

naming me and my brother as agents. Following the events in April 2018 she made a new power

of attorney. No attempts were ever made by me to have a guardian appointed because a power of

attorney and health care proxy are in place.

**Interrogatory No. 13**

Identify all any instances or occurrences of any physical, mental or emotional manifestations of

Plaintiff Abhyankar's "functional limitations," as alleged in paragraph 10 of the Complaint.

**Response to Interrogatory No. 13**

Plaintiff Behrstock answers as follows: Impaired judgement with respect to financial decisions.

Lack of recognition of the full impact of certain actions. Overly trusting of authority and

institutions. Memory is faulty. Not so much a grounding in reality-fixated on trivial things that are

not important.

**Interrogatory No. 14**

Identify any bank(s) or financial institutions other than Chase that were asked to implement similar

safeguards as alleged in paragraphs 11 and 12 of the Complaint concerning any bank accounts or

brokerage accounts maintained in Plaintiff Abhyankar's name.

**Response to Interrogatory No. 14**

Plaintiffs object to Interrogatory No. 14 to the extent that the term "similar safeguards" is not

defined. Subject to this objection, Plaintiff Behrstock answers as follows: (a) an account with

TIAA Creff was turned off and TIAA Creff put a freeze on the account; (b) Morgan Stanley was

made aware of my mother's issues; and (c) My mother's Regions Bank account was closed.

**Interrogatory No.15**

Describe Plaintiff Abhyankar's living situation since January 1, 2017 by providing the following

information:

(a) Home address;

(b) Identify all persons who reside at the same address, and their relationship (if any) to Plaintiff

Abhyankhar; and

(c) Identify any person(s) who are responsible to perform any daily tasks or responsibilities for Plaintiff Abhyankar, including but not limited to, cooking, cleaning, shopping, grooming. and the task(s) and responsibilities that each person performs.

**Response to Interrogatory No. 15**

Plaintiff Behrstock answers as follows:

(a) 235 West 102nd Street Apt 10a, New York, New York 10025;

(b) My mother is the sole occupant; and

(c) I help my mother. I visit her house daily. My mom has a helper 5 days a week for a couple of hours each day.

**Interrogatory No. 16**

Identify in detail the substance of the alleged communications between Plaintiff Behrstock and Chase alleged in paragraphs 15-17 of the Complaint.

**Response to Interrogatory No. 16**

Plaintiff Behrstock answers as follows:  Me and my husband, Jason, asked what the transaction was. They told us pending. Then we were trying to figure out how to stop the transfer. Chase gave us the runaround from department to department-we were constantly told to speak with a different person at a different department. We were on the phone for hours to sort it out. We were told to call back early the next day before the transfer went through. The next day my brother and I got on the phone early in the morning and again got a runaround. We talked to various people at various departments but they did not do anything. We were repeatedly told by Chase that the transaction was pending and we repeatedly asked Chase to prevent the transaction from completing. During the calls we also asked Chase to recall the other wires. We reiterated the

urgency of the situation several times.

**Interrogatory No. 17**

Identify all persons with whom You have communicated concerning the Alleged Transfers.

**Response to Interrogatory No. 17**

Plaintiffs object to the extent that the scope of Interrogatory No. 17 is not proportional to the amount in controversy. Subject to these objections, Plaintiff Behrstock answers as follows: My husband, my brother, Chase, Lorena Meija, numerous friends, acquaintances, and colleagues.

**Interrogatory No. 18**

Identify in detail the actions allegedly taken by Plaintiff Behrstock, as agent for Plaintiff Abhyankar, to prevent Plaintiff Abhyankar from allegedly transferring money to alleged fraudsters, as referenced in paragraphs 5-8, 10 and 14 of the Complaint.

Response to Interrogatory No. 18

Plaintiffs object to Interrogatory No. 18 to the extent that the probative value is substantially outweighed by a danger of needlessly presenting cumulative evidence.

**Interrogatory No. 19**

State with particularity each and every fact upon which You intend to rely in support of each and every allegation in the Complaint.

**Response to Interrogatory No. 19**

Plaintiffs object to the extent that the scope of Interrogatory No. 19 is not proportional to the amount in controversy. Plaintiffs further object to Interrogatory No. 19 to the extent that Plaintiffs have produced, or shall produce, all discoverable documentation in response to all of Defendants' discovery requests.

**Interrogatory No. 20**

Set forth specifically and in detail the basis for and the calculation of each category of damage alleged in the Complaint.

**Response to Interrogatory No. 20**

Plaintiffs object to Interrogatory No. 20 to the extent that the probative value is substantially outweighed by a danger of needlessly presenting cumulative evidence. Subject to these objections, Plaintiff Behrstock answers as follows:

March 6, 2018
Transfer from Savings to Checking
$10,300.00

March 8, 2018
Cash Withdrawal from Checking deposited into Fraudster's account
$9,000.00

March 13, 2018
Transfer from Savings to Checking
$20,000.00

March 15, 2018
Transfer from Savings to Checking
$30,000.00

March 15, 2018
Wire Transfer from Checking to Fraudster
$30,000.00

March 16, 2018
Transfer from Savings to Checking
$48,000.00

March 16, 2018
Wire Transfer to Fraudster from Checking
$48,000.00

March 29, 2018
Transfer from Savings to Checking
$48,000.00

March 29, 2018
Wire Transfer from Checking to Fraudster

$48,000.00

In addition, on April 4, 2018, I learned from my mom that she had made a $47,000.00 transfer to someone who had been "harassing her" on the phone for weeks.

**Interrogatory No. 21**

Identify all persons whom Plaintiff intends to use as an expert witness at trial, and state: the substance of the facts and opinions to

a. which the expert is expected to testify;

and

b. a summary of the grounds for each opinion.

**Response to Interrogatory No. 21**

Plaintiff Behrstock answers as follows:  No expert witness has been retained at this time.

Dated: New York, New York
       February 26, 2019

DANIEL J. REITER, ESQ.
(DR4426)
111 John Street, Suite 1115
New York, New York 10038
(646) 820-4011
*Attorney for Plaintiffs Kashi Behrstock as agent for Yvonne M. Abhyankar, and Kashi Behrstock in her individual capacity.*

## VERIFICATION

I, Kashi Behrstock, state that I have read Defendants' First Set of Interrogatories dated January 16, 2019 and my answers to those interrogatories, which are true to the best of my knowledge, information, and belief. I declare under penalty of perjury that the foregoing is true and correct.

KASHI BEHRSTOCK

## CERTIFICATE OF SERVICE

I hereby certify that on this ___27___ day of February, 2019, I caused a true and correct copy of Plaintiffs' Responses to Defendants' First Set of Interrogatories to be served via regular mail on Defendants' counsel of record listed below.

_____

DANIEL J. REITER

To:  **VIA REGULAR MAIL**
     Lauren C. Watson
     Tyler J. Kandel
     Emmet, Marvin & Martin, LLP
     120 Broadway- 32nd Floor
     New York, New York 10271
     Telephone: (212) 238-3000
     *Attorneys for Defendants JPMorgan Chase & Co.,
     and JPMorgan Chase Bank, N.A.*