```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
YVONNE M. ABHYANKAR,                            :
BY KASHI BEHRSTOCK, AS AGENT, AND               :    18-cv-9411 (PKC)
KASHI BEHRSTOCK,                                :
                                                :
                            Plaintiffs,         :
                                                :
               -against-                        :
                                                :
JPMORGAN CHASE & CO.,                           :
JPMORGAN CHASE BANK, N.A.,                      :
                                                :
                            Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE RULE 21**

DANIEL J. REITER, ESQ.
(DR4426)
111 John Street, Suite 1115
New York, New York 10038
(646) 820-4011
*Attorney for Plaintiffs Kashi Behrstock as agent for Yvonne M. Abhyankar, and Kashi Behrstock in her individual capacity.*

Page 1 of 9

## STATEMENT OF FACTS

This is an action for breach of fiduciary duty, breach of contract, negligence, and liability pursuant to 15. U.S.C. § 1693h. The action was brought by Plaintiff Yvonne M. Abhyankar by Kashi Behrstock, as agent ("Plaintiff Abhyankar"); and Kashi Behrstock ("Plaintiff Behrstock" and collectively, "Plaintiffs"); against Defendants JPMorgan Chase & Co. ("Co. Defendant") and JPMorgan Chase Bank, N.A. ("N.A. Defendant and collectively, "Defendants" or "Chase").

On or about June 19, 2017, Plaintiff Behrstock discovered that on June 15, 2017 an unknown person or entity had hacked into her mother, Plaintiff Abhyankar's, Chase savings account and transferred $5,299.00 to Plaintiff Abhyankar's checking account. The hacker then called 81-year-old Plaintiff Abhyankar on her cell phone and advised her that they had given her too much money when they had refunded her for a printer, and that she owed them the excess amount. Plaintiff Abhyankar was advised that the refund was for only $299.00, and that she was to return the excess $5,000.00. As directed by the fraudster, Plaintiff Abhyankar entered a Chase branch office where she wrote a check to cash for $5,000.00. Plaintiff Abhyankar then took the $5,000.00 in cash and walked four blocks to a branch of Bank of America, where she deposited the $5,000.00 in cash into an account number that she was given by the fraudster.

Plaintiff Behrstock discovered the occurrence, and brought same to the attention of Lorena Mejia, Plaintiff Abhyankar's Chase Private Client Account Representative, on June 19, 2017. Ms. Mejia advised Plaintiff Behrstock to take a series of steps to prevent further occurrences. In addition, it was agreed that Plaintiff Behrstock would be informed by Chase before any large withdrawals or transfers were authorized. Plaintiff Behrstock would also be notified of any unusual activity. Despite this assurance, and Chase's knowledge of Plaintiff Abhyankar's functional limitations, Chase allowed various large transfers to be made on various dates in March 2018

without notifying either of Plaintiffs or taking any other action.[1]

In addition, on April 4, 2018, Plaintiff Behrstock learned from Plaintiff Abhyankar that Plaintiff Abhyankar had made a $47,000.00 transfer to someone who had been "harassing her" on the phone for weeks. Plaintiff Behrstock called Chase immediately. Plaintiff Behrstock was informed by Chase that the transaction was still "pending", but was told the transaction could not be stopped, despite spending over eight hours on the phone with Chase. Plaintiff Behrstock was told that although the transaction would not be stopped, the assets would be frozen in the account into which they were transferred. While on the phone with Chase, Plaintiff Behrstock logged in to Plaintiff Abhyankar's account and discovered the aforementioned transactions of escalating size. In all, Plaintiff Abhyankar made $201,000.00 in transfers to fraudsters.

During all relevant periods, it was not clear, nor does it remain clear, which "Chase" – either the Co. Defendant, N.A. Defendant, or both – the Plaintiffs dealt and communicated with; which "Chase" was in charge of fraud prevention; which "Chase" employed Ms. Mejia; and the roles, responsibilities, and relationship between the "Chase" defendants. This is because Defendant(s) almost always held itself/themselves out as "Chase".

For example, correspondence from Chase to the undersigned's office following the discovery of the fraudulent transfers merely reads "Chase" (*See* **Exhibit "A"**). There is no indication anywhere on the document which "Chase" was attending to the transfers. In addition, printouts of certain documents from Chase portray the names of both the Co. Defendant and the N.A. Defendant (*See* **Exhibit "B"**). Moreover, although the Co. Defendant is named a party to the purported account agreement provided by Defendants in discovery, the account agreement reads "other products or services such as online banking or retirement accounts, may have additional

---

[1] More details regarding the transfers are expounded upon in the Complaint.

agreements. A more specific agreement takes precedence over this one." (*See* **Exhibit "C"** at page 2). It is not clear whether any other such agreements govern or who the parties to these agreements are. Finally, on page 27 of the account agreement, under a section entitled "Who we are" there is text immediately thereunder that reads "Who is providing this notice? The JP Morgan Chase & Co. family of companies. ...".

**THE COURT SHOULD ALLOW
PLAINTIFFS TO CONCLUDE DISCOVERY
PRIOR TO DROPPING CO. DEFENDANT**

Pursuant to Federal Rules of Civil Procedure Rule 21, "Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." A federal district court has broad discretion in ruling on a motion brought under FRCP Rule 21. Glendora v. Malone, 917 F. Supp. 224, 227 (S.D.N.Y. 1996). It is within the sound discretion of the federal district court whether to add or drop a party pursuant to FRCP Rule 21. City of Syracuse v. Onondaga County, 464 F.3d 297, 308 (2d Cir. 2006).

**Contrary to Defendants' contentions, the immediate issue in the case-at-bar is not whether the Co. Defendant is a proper party. Rather, the issue is whether the Plaintiffs are entitled to discovery to determine whether the Co. Defendant is a proper party because there is evidence supporting the allegation that it is liable.**

In Stewart v. IRS, the court held that, before granting a defendant's motion to dismiss pre-discovery, the plaintiff was entitled to engage in discovery to demonstrate jurisdiction. 157 F.R.D. 153; 1994 U.S. Dist. LEXIS 12225 (E.D.N.Y. 1994).

> [T]he Court is mindful that, when considering a 12(b)(1) motion, a court is required "to weigh the evidence and satisfy itself as to the existence of its power to hear the case." (citation omitted). Indeed; to ensure that it is not dismissing a valid claim for lack of subject

> matter jurisdiction, a court may permit the party asserting jurisdiction to engage in discovery to demonstrate jurisdiction. (citation omitted). This limited discovery is especially appropriate where the facts regarding jurisdiction are peculiarly within the knowledge of the opposing party.

Stewart at 157 F.R.D. 153, 156; 1994 U.S. Dist. LEXIS 12225 **9-**10.

Furthermore, in Ball v. Metallurgie Hoboken-Overpelt, S.A., the court held that a pre-discovery challenge to jurisdiction should be defeated where the plaintiff pleads in good faith, which is certainly the case in the instant action. 902 F.2d 194, 197 (2d Cir. 1990).

> Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, see Fed.R.Civ.P. 11, legally sufficient allegations of jurisdiction. At that preliminary stage, the plaintiff's prima facie showing may be established solely by allegations. After discovery, the plaintiff's prima facie showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant. (citations omitted). At that point, the prima facie showing must be factually supported.

Id.

Accordingly, Defendants' motion is premature, and it is respectfully submitted that this Honorable Court should, in its exercise of sound discretion, allow Plaintiffs to conclude discovery before entertaining a motion to dismiss and drop the Co. Defendant. City of Syracuse, *supra*, at 308 (It is within the sound discretion of the federal district court whether to add or drop a party pursuant to FRCP Rule 21).

Defendants cite Cohn v. KeySpan Corp., in support of their position that the Co. Defendant should be dismissed. 713 F. Supp. 2d 143 (E.D.N.Y 2010). However, Cohen is unavailing. In Cohen, plaintiff alleged, *inter alia*, employment discrimination based on disability, a hostile work environment and retaliation in violation of the Americans with Disabilities Act, ("ADA"), 42 U.S.C. § 12101, et seq., the Rehabilitation Act of 1973 ("the Rehabilitation Act"), 29 U.S.C. §

792, et seg., and the New York State Executive Law § 296 ("NYSHRL"). Id at 147. The defendants in Cohen, who were various individuals and corporations, moved for dismissal of defendants KeySpan and LIPA pursuant to FRCP Rule 21 under the theory that the plaintiff was never employed by KeySpan or LIPA. Id. at 152. However, the court in Cohen held **against** KeySpan and LIPA. Id. at 153.

> In opposition, plaintiff submits certain employment documents indicating, *inter alia*, that she was an employee of "KeySpan," and/or "KeySpan Corporate Services LLC," (Exs. C-G), as well as a copy of her current employee identification badge containing the names of both LIPA and National Grid. (Ex. G; Plf. Aff., ¶ 6). Those exhibits ... are sufficient at this early stage in the litigation to preclude dropping KeySpan Corporation and LIPA as defendants in this action. If, following discovery, it is demonstrated that KeySpan Corporation and/or LIPA, in fact, have no connection to plaintiffs employment discrimination and retaliation claims, those defendants may renew their motion to drop them from this action pursuant to Rule 21 prior to trial.

Id. at 153.

Like the plaintiff in Cohen, the Plaintiffs in the instant action have proffered sufficient evidence in this early stage of litigation to preclude dropping the Co. Defendant because there are various facts, and documents already provided in discovery (some of which are exhibited hereto) that confuse the issue as to which "Chase" acted at which times.

Glendora v. Malone, another case cited by Defendants, is not analogous to the instant matter. 917 F. Supp. 224 (S.D.N.Y. 1996) In Glendora, the court dismissed defendant TCI *only* because it was ***impossible*** for TCI to have been the entity responsible for reallocating Channel 8:

> The complaint alleges that TCI is responsible for the decision to reallocate Channel 8. See, e.g., Complaint, at ¶¶ 33, 48, 50, 52. Plaintiff appears to have named TCI inadvertently, however, as the complaint describes TCI as "the only cable system serving these 21 municipalities in Westchester County." Complaint, at ¶ 9. Defendants have established to the court's satisfaction that TCI-Westchester, rather than TCI, is the company that operates the cable

system serving the municipalities in southern Westchester County. Id. at 227.

In addition, in Glendora, the plaintiff appears to have "named seventeen defendants" haphazardly, and with little care. Id. at 226. This is not the case in the instant matter, where Plaintiffs have, in good faith, and with careful consideration, named Co. Defendant based on a cognizable theory of liability and direct connection to the matter.

Defendants also quote *dicta* in U.S. v. Bestfoods in support of their motion: "[i]t is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation ... is not liable for the acts of its subsidiaries". 524 U.S. 51, 61 (1998). However, in *dicta* the U.S. Supreme Court *also* opines that the said principle is general in nature: "But there is an equally fundamental principle of corporate law, applicable to the parent-subsidiary relationship as well as generally, that the corporate veil may be pierced and the shareholder held liable for the corporation's conduct" in various circumstances. Id. at 62.

In the instant matter, the issue is not necessarily whether the parent corporation, Co. Defendant, is liable for the acts of a subsidiary, the N.A. Defendant. Instead, **the issue at the current juncture is whether the Co. Defendant acted at all or in any way that caused harm to Plaintiffs, which it very well may have, and which Plaintiffs and this Honorable Court cannot determine with certainty until after the close of discovery**.

In D. Carlyle Intern. LLC v. J.P. Morgan Chase & Co., a case provided by Defendants where the Co. Defendant is dropped, the Court's decision is made in the context of a motion to amend in an Employment Credit Opportunity Act matter, which is not analogous to the instant action. 2011 WL 1676049 (S.D.N.Y. 2011). The Court opines: "Despite receiving notice (six weeks prior to their filing of the Amended Complaint) that Chase & Co. was an improper

defendant, Plaintiffs did not change the Defendant in the Amended Complaint." Id. at *3.

D. Carlyle Intern. LLC pertains to failure by a plaintiff to name a party in the first instance, and continued failure by a plaintiff to amend its complaint despite adequate notice of such. Id. In the instant action, Plaintiffs have not named the wrong defendant, and have not caused delay in amending their Complaint. Rather, Plaintiffs name as a defendant the Co. Defendant because it is cognizable that same is liable (particularly since its name appears on documents already provided *by* and *to* Defendants in discovery).

In re Aluminum Warehousing Antitrust Litigation, the second case provided by Defendants in which the Co. Defendant is dropped, is also unavailing. 2015 WL 1344429 (S.D.N.Y. 2015). In re Aluminum Warehousing Antitrust Litigation, the court renders a decision regarding whether a party is improperly named a defendant absent allegations that the said corporation failed to follow corporate formalities. Id. at *3. This is not analogous to this instant matter, which is, among other things, an action for breach of fiduciary duty.

## CONCLUSION

Contrary to Defendants' contentions, the issue in the case-at-bar is not whether the Co. Defendant is a proper party. Rather, the issue is whether the Plaintiffs are entitled to discovery to determine whether the Co. Defendant is a proper party. Accordingly, Defendants' motion is premature, and it is respectfully submitted that this Honorable Court should, in its exercise of sound discretion, allow Plaintiffs to conclude discovery before entertaining a motion to dismiss and drop the Co. Defendant. City of Syracuse, *supra*, at 308 (It is within the sound discretion of the federal district court whether to add or drop a party pursuant to FRCP Rule 21).

Based on the foregoing, Plaintiffs respectfully request that this Honorable Court dismiss Defendants' motion in its entirety, and for such other and further relief as this Honorable Court

shall deem just, proper, and equitable.

Dated: New York, New York
February 28, 2019


_____
DANIEL J. REITER, ESQ.
(DR4426)
111 John Street, Suite 1115
New York, New York 10038
(646) 820-4011
*Attorney for Plaintiffs Kashi Behrstock as agent for Yvonne M. Abhyankar, and Kashi Behrstock in her individual capacity.*

To: **VIA REGULAR MAIL**
Lauren C. Watson
Tyler J. Kandel
Emmet, Marvin & Martin, LLP
120 Broadway- 32nd Floor
New York, New York 10271
Telephone: (212) 238-3000
*Attorneys for Defendants JPMorgan Chase & Co., and JPMorgan Chase Bank, N.A.*