UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
YVONNE M. ABHYANKAR by KASHI
BEHRSTOCK, as agent, and KASHI
BEHRSTOCK,

                Plaintiff,                          18-cv-9411 (PKC)

      -against-                           OPINION AND ORDER

JPMORGAN CHASE, N.A.,

                Defendant.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        In June 2017, a purported fraudster persuaded plaintiff Yvonne M. Abhyankar to transfer approximately $5,000 out of her checking account with JPMorgan Chase, N.A. ("Chase"). Alarmed by the apparent scam, Abhyankar and her adult daughter, plaintiff Kashi Behrstock, arranged for an in-person meeting at a Chase branch in Manhattan on June 19, 2017, where a Chase employee named Lorena Mejia advised them on measures intended to safeguard Abhyankar's accounts. As a result of the meeting, Behrstock became a joint owner of both Abhyankar's checking account and savings account.

        Despite these precautions, in March and April 2018, Abhyankar requested a series of wire transfers to a purported fraudster, in an amount totaling $192,000. Abhyankar arranged for the transfers in person at a Chase branch, where employees verified her identification prior to completing the requested transactions.

        Plaintiffs assert that Chase is liable for permitting Abhyankar to make these transfers in 2018, and bring claims against Chase under state and federal law. They contend that Chase knew that Abhyankar was an elderly person with a functional limitation but nevertheless

permitted her to transfer large sums of money. The Complaint brings claims for breach of contract, breach of fiduciary duty and negligence under New York law, and one claim under the Electronic Fund Transfer Act, 15 U.S.C. § 1693h.

Discovery in this case is now closed. Plaintiffs and defendant have each moved for summary judgment in their favor. For the reasons that will be explained, defendants' summary judgment motion will be granted in its entirety and the plaintiffs' motion will be denied.

BACKGROUND.

A. Abhyankar's Initial $5,000 Transfer and Plaintiffs' Changes to Her Accounts.

Unless otherwise noted, the following facts are undisputed.

In June 2017, Abhyankar fell victim to a scam in which she transferred $5,000 from her Chase account to an apparent fraudster. (Def. 56.1 ¶ 9; Pl. 56.1 Resp. ¶ 9.[1]) She was 82 years old at the time. (Pl. 56.1 ¶ 3; Def. 56.1 Resp. ¶ 3.)

On June 19, 2017, Behrstock, who is Abhyankar's daughter, learned about the transfer. (Pl. 56.1 ¶ 7; Def. 56.1 Resp. ¶ 7.) That day, Behrstock and Abhyankar went to a Chase branch and discussed the transfer with Mejia, who has the job title of Chase Private Account Banker. (Def. 56.1 ¶ 10; Pl. 56.1 Resp. ¶ 10; Pl. 56.1 ¶ 8; Def. 56.1 ¶ 8.)

Mejia advised plaintiffs to take certain steps that were intended to lessen the risk that Abhyankar would fall prey to a future scam. On Mejia's advice, plaintiffs closed Abhyankar's existing checking account and jointly opened a new one. (Pl. 56.1 ¶¶ 12-13; Def. 56.1 Resp. ¶¶ 12-13.) Behrstock also was made a joint owner of Abhyankar's savings account. (Def. 56.1 ¶ 11; Pl. 56.1 Resp. ¶ 11.) Plaintiffs took additional precautions with regard to the

---

[1] Citations to the parties' Rule 56.1 Statements is a shorthand means of referring to the underlying evidence cited in the corresponding paragraph.

accounts, including ensuring that automatic account transfers, deposits, payments and overdraft protections were not permitted.  (Def. 56.1 ¶ 11; Pl. 56.1 Resp. ¶ 11.)

At that June 19, 2017 meeting, Mejia conferred with a "banker support line" to confirm that she was following Chase's policies and procedures.  (Pl. 56.1 ¶ 25; Def. 56.1 Resp. ¶ 25.)  Plaintiffs assert that Chase does not have standard policies and procedures that apply to the circumstances of this case, which Chase disputes.  (Pl. 56.1 ¶¶ 26-27; Def. 56.1 ¶¶ 26-27.)

Mejia has denied that, at that meeting, she promised to alert Behrstock to any large or unusual transactions made on the accounts by Abhyankar.  (Def. 56.1 ¶ 15; Pl. 56.1 Resp. ¶ 15.)  The record does not include evidence that Mejia made such a statement.  Similarly, at her deposition, Behrstock did not recall that Mejia orally agreed to notify her of large withdrawals or transfers made by Abhyankar.[2]  (Def. 56.1 ¶¶ 13-14; Pl. 56.1 Resp. ¶¶ 13-14.)  Plaintiffs and Chase did not adopt any requirement that Behrstock authorize future transactions made by Abhyankar.  (Def. 56.1 ¶ 16; Pl. 56.1 Resp. ¶ 16.)  Mejia did not inform anyone else at Chase about her discussion with plaintiffs or the transfer of $5,000 from Abhyankar's account.  (Pl. 56.1 ¶¶ 29-31; Def. 56.1 Resp. ¶¶ 29-31.)

B.  The 2018 Transfers Made by Abhyankar to the Purported Scammer.

In March and April 2018, Abhyankar requested a series of one-time account transfers that totaled $192,000 in funds.  (Def. 56.1 ¶¶ 17, 21; Pl. 56.1 Resp. ¶¶ 17, 21.)  Each of these transfers was initiated by Abhyankar in person at a Chase branch, and her identification was verified prior to the transfers.  (Def. 56.1 ¶ 20; Pl. 56.1 Resp. ¶ 20.)  Chase did not flag these transactions as suspicious in nature.  (Pl. 56.1 ¶¶ 38, 41, 44, 47; Def. 56.1 Resp. ¶¶ 38, 41, 44, 47.)

---

[2] By agreement, Abhyankar's deposition was not taken and she has offered no testimonial evidence on the motions. (Stipulation & Order filed Oct. 7, 2019 (Docket # 64).)

All transfers were made from plaintiffs' joint savings account, and included a March 13, 2018 transfer of $19,000; a March 15, 2018 transfer of $30,000; a March 16, 2018 transfer of $48,000; and a March 29, 2018 transfer of $48,000. (Def. 56.1 ¶ 18; Pl. 56.1 Resp. ¶ 18.) The transfers were made to entities named Go Luxury LLC, Tourneau LLC, Albert & Sons Corp., Sheng Li Telecom International LLC and an individual named Hari Subedi. (Pl. 56.1 ¶¶ 37, 40, 43, 46, 50; Def. 56.1 Resp. ¶¶ 37, 40, 43, 46, 50.) Abhyankar also requested an internal transfer of $47,000 from the joint checking account to another Chase account. (Def. 56.1 ¶ 19; Pl. 56.1 Resp. ¶ 19.) Each transfer was a one-time transfer. (Def. 56.1 ¶ 21; Pl. 56.1 Resp. ¶ 21.)

On April 4, 2018, Behrstock learned from Abhyankar that she transferred $47,000 to someone who had been "harassing her" over the phone. (Pl. 56.1 ¶ 49; Def. 56.1 Resp. ¶ 49.) Behrstock immediately called Chase. (Pl. 56.1 ¶ 51; Def. 56.1 Resp. ¶ 51.) According to Behrstock, the transaction was denoted as "pending" at that time, and Chase informed her that the transfer could not be stopped. (Pl. 56.1 ¶¶ 52-53; Def. 56.1 Resp. ¶¶ 52-53.)

At her deposition, Behrstock testified that she did not monitor the accounts, and that she only accessed the accounts online to pay Abhyankar's credit card bills. (Def. 56.1 ¶ 23; Pl. 56.1 Resp. ¶ 23.) Behrstock testified that she first learned of the transfers on April 4, 2018, when Abhyankar informed her that she had transferred $47,000. (Def. 56.1 ¶ 24; Pl. 56.1 Resp. ¶ 24.)

Chase first learned that the transfers were made to an alleged fraudster when contacted by Behrstock on April 4, 2018. (Def. 56.1 ¶ 25; Pl. 56.1 Resp. ¶ 25.) Behrstock filed a claim with Chase seeking reimbursement. (Def. 56.1 ¶ 26; Pl. 56.1 Resp. ¶ 26.) Chase denied Behrstock's claim as a "Benefit Received" because Abhyankar, as an authorized signor, personally requested the transfers. (Def. 56.1 ¶ 27; Pl. 56.1 Resp. ¶ 27.) However, Chase

attempted to rescind the transfers, and was successfully able to do so for the $19,000 transfer of March 13, 2018. (Def. 56.1 ¶¶ 28-29; Pl. 56.1 Resp. ¶¶ 28-29.) When Chase attempted to rescind the $48,000 transfer of March 16, Chase informed plaintiffs that it needed a copy of the police report filed by plaintiffs, which plaintiffs did not produce to Chase. (Def. 56.1 ¶¶ 31-33; Pl. 56.1 Resp. ¶¶ 31-33.) Chase was otherwise unable to rescind the transfers. (Def. 56.1 ¶¶ 30, 34; Pl. 56.1 Resp. ¶¶ 30, 34.)

In an internal Chase e-mail submitted by plaintiffs, the manager of the branch where Mejia worked stated that the branch made no agreement to stop Abhyankar from making the transfers, and that she made in-person transfer requests at various branch locations. (Pl. 56.1 Ex. 11.) The manager's e-mail added, "If the client simply went to her assigned Private Client Banker, I believe this is something we might've been able to prevent." (Id.)

Plaintiffs' memoranda suggest that Abhyankar has a "functional limitation" that left her vulnerable to elder fraud. (See, e.g., Docket # 78-20 at 12-15, 78-22 at 7.) However, it is unclear from the record what, if any, medical condition affects Abhyankar. Plaintiffs' memoranda suggests that an elderly person "do[es] not need to have any particular diagnosis to be vulnerable" to fraud (Docket # 78-22 at 7), and the parties' statements filed pursuant to Local Civil Rule 56.1 do not assert that Abhyankar has been diagnosed with a condition that would impede or complicate her ability to manager her financial affairs. It is undisputed that in April 2018, Abhyankar lived alone in a residential apartment, traveled throughout New York City, and handled her own shopping, including online purchases. (Def. 56.1 ¶ 35; Pl. 56.1 Resp. ¶ 35.) At that time, she had not sought medical treatment for any possible mental deficiencies or limitations on functioning. (Def. 56.1 ¶ 38; Pl. 56.1 Resp. ¶ 38.) "At all relevant times, [Abhyankar] was 82 years old or approximately 82 years old." (Pl. 56.1 ¶ 3; Def. 56.1 ¶ 3.)

Plaintiffs do not assert that Chase had reason to conclude that Abhyankar had been diagnosed with a condition that limited her ability to manage her accounts.

SUMMARY JUDGMENT STANDARD.

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed. R. Civ. P. A fact is material if it "might affect the outcome of the suit under the governing law . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Anderson, 477 U.S. at 248). On a motion for summary judgment, the court must "construe the facts in the light most favorable to the non-moving party" and "resolve all ambiguities and draw all reasonable inferences against the movant." Delaney v. Bank of Am. Corp., 766 F.3d 163, 167 (2d Cir. 2014) (quotation marks omitted).

It is the initial burden of the movant to come forward with evidence sufficient to entitle the movant to relief in its favor as a matter of law. Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004). If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." Simsbury-Avon Pres. Soc'y LLC v. Metacon Gun Club, Inc., 575 F.3d 199, 204 (2d Cir. 2009). In raising a triable issue of fact, the non-movant carries only "a limited burden of production," but nevertheless "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward with 'specific facts showing that there is a genuine issue for trial.'" Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004) (quoting Aslanidis v. U.S. Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993)).

A court "may grant summary judgment only when 'no reasonable trier of fact could find in favor of the nonmoving party.'" Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir. 1995) (citation omitted). "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim.  In that event, the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." Simsbury-Avon Pres., 575 F.3d at 204 (internal citation omitted).

DISCUSSION.

      I.      Summary Judgment Is Granted to Chase on Plaintiffs' Breach of Fiduciary Duty Claim.

Count One of the Complaint asserts that plaintiffs entered into a fiduciary relationship with Chase during the June 19, 2017 meeting with Mejia.  (Compl't ¶¶ 19-25.) According to the Complaint, a fiduciary relationship formed when Behrstock told Mejia about "the existence of a hacker" and Abhyankar's "functional limitations and vulnerability to fraud." (Compl't ¶ 22.)  The Complaint alleges that Chase undertook "[a]n assumption of control and responsibility" by taking "a series of actions to protect Plaintiffs from further fraud" and that plaintiffs reposed confidence in Chase based on its expertise and resources.  (Compl't ¶ 23-24.)

In moving for summary judgment, Chase urges that the evidence would not permit a reasonable factfinder to conclude that it formed a fiduciary relationship with plaintiffs. In opposition, plaintiffs have not pointed to evidence sufficient to permit a reasonable factfinder to conclude that a fiduciary relationship had been formed with Chase.  Chase's motion will therefore be granted.

"Breach of fiduciary duty requires (1) the existence of a fiduciary duty owed by the defendant; (2) a breach of that duty; and (3) resulting damages." Jones v. Voskresenskaya,

125 A.D.3d 532, 533 (1st Dep't 2015).  "A fiduciary relationship 'exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation.'"  AG Capital Funding Partners, L.P. v. State St. Bank & Tr. Co., 11 N.Y.3d 146, 158 (2008) (quoting EBC I, Inc. v. Goldman, Sachs & Co., 5 N.Y.3d 11, 19 (2005)).  A fiduciary relationship "is grounded in a higher level of trust than normally present in the marketplace between those involved in arm's length business transactions."  EBC I, Inc., 5 N.Y.3d at 19.  The two "essential elements" of a fiduciary relationship are "de facto control and dominance."  AG Capital, 11 N.Y.3d at 158; accord Marmelstein v. Kehillat New Hempstead, 11 N.Y.3d 15, 21 (2008).  Determining whether parties have entered into a fiduciary relationship "inevitably requires a fact-specific inquiry."  Roni LLC v. Arfa, 18 N.Y.3d 846, 848 (2011).

Although identifying the existence of fiduciary relationship requires a fact-intensive inquiry, typically "a fiduciary relationship . . . does not exist between a bank and its customer."  Greenberg, Trager & Herbst, LLP v. HSBC Bank USA, 73 A.D.3d 571, 572 (1st Dep't 2010); accord Underground Utilities Inc. v. JP Morgan Chase Bank, N.A., 147 A.D.3d 702, 702 (1st Dep't 2017) ("The Custodial Service Agreement reflects that defendant owed no fiduciary or other obligation to plaintiff, who was a mere depositor and recipient of periodic bank statements on the accounts."); Bank Leumi Trust Co. of N.Y. v. Block 3102 Corp., 180 A.D.2d 588, 589 (1st Dep't 1992) ("The legal relationship between a borrower and a bank is a contractual one of debtor and creditor and does not create a fiduciary relationship between the bank and its borrower or its guarantors."); Fallon v. Wall St. Clearing Co., 182 A.D.2d 245, 250 (1st Dep't 1992) ("A debtor-creditor relationship, standing alone, does not create a fiduciary duty of the latter to the former."); Grant v. Apple Bank for Sav., 67 Misc. 3d 1214(A) (N.Y. Sup. Ct.

N.Y. Cnty. 2020) (dismissing breach of fiduciary duty claim arising from depositor's intra-bank transfer because the bank had no fiduciary duty to depositor).

In asserting that Chase assumed the role of a fiduciary, plaintiffs point to the fact that they met with Mejia on June 19, 2017, and that during the course of that meeting, plaintiffs closed Abhyankar's existing checking account, jointly opened a new checking account, and made Behrstock the joint owner of Abhyankar's savings account. (Def. 56.1 ¶ 11.) During that meeting, plaintiffs took other measures related to the Chase accounts: Abhyankar ordered an ATM card, as opposed to a debit card; plaintiffs stopped automatic transfers from the savings account to the checking account; stopped automatic deposits into the checking account from Abhyankar's non-Chase accounts; stopped automatic payments from the checking account to Abhyankar's credit card; and removed overdraft protections. (Def. 56.1 ¶ 11.) These show nothing more than the ordinary operation of the contractual relationship between a bank and a depositor.

The Court has reviewed portions of the deposition transcripts furnished by the parties. In her deposition, Mejia testified that plaintiffs told her that "a scam had occurred" in relation to Abhyankar's Chase account, and that Mejia then reviewed computer records of a fund transfer. (Mejia Dep. 18, 21.) Mejia testified that she and plaintiffs were concerned about possible hacking, and that she recommended that Abhyankar change her password. (Id. 23.) Behrstock testified that the meeting with Mejia included discussions about measures to protect against hacking. (Behrstock Dep. 105-08.) She testified that Mejia recommended opening a new checking account and using an ATM card rather than a debit card, as well as stopping automatic payments on bills. (Id. 112-13, 146.) Behrstock testified that she wanted to understand protections that could be used to shield Abhyankar from fraud. (Id. at 116.)

Plaintiffs assert that their "steps were taken in consultation" with Mejia and that "many" of their account-related decisions were "implemented by her recommendation." (Pl. Opp. Mem. at 4.) They urge that, through Mejia, Chase accepted an "'assumption of control and responsibility' over the matter." (Id.)

Drawing every reasonable inference in favor of plaintiffs as the non-movants, the evidence to which they point shows a retail-banking relationship and would not permit a reasonable factfinder to conclude that the parties entered into a fiduciary relationship at the June 19, 2017 meeting. The evidence cited by plaintiffs describes the efforts of a bank employee to advise them on precautions they might take in light of a transfer to a purported fraudster. They do not describe "de facto control and dominance" by Chase. See AG Capital, 11 N.Y.3d at 158. As noted, New York law provides that typically a fiduciary relationship "does not exist between a bank and its customer." Greenberg, Trager & Herbst, 73 A.D.3d at 572. It is undisputed that plaintiffs had unfettered access to their accounts following their meeting with Mejia. There is no suggestion that plaintiffs were obligated to take the precautions that Mejia advised, which plaintiffs' memorandum characterize as "recommendation[s]." (Pl. Opp. Mem. at 4.) Plaintiffs do not point to evidence that Chase, through Mejia, agreed to assume additional authority over the accounts, such as monitoring them for large transfers or requiring Behrstock's approval for large transactions. Because there is no evidence that Chase assumed a special role of control or trust over the management of plaintiffs' accounts, no reasonable trier of fact could conclude that Chase assumed a fiduciary role over the accounts.

Defendants' summary judgment motion is therefore granted as to plaintiffs' breach of fiduciary duty claim.

II.	Summary Judgment Is Granted to Chase on Plaintiffs' Negligence Claim.

Count Three of the Complaint alleges that Chase had a duty to implement commercially reasonable security measures to protect plaintiffs' accounts, and that it breached that duty by permitting fraudulent activity to occur, resulting in damages. (Compl't ¶¶ 34-38.) For the same reasons discussed in relation to plaintiffs' claim or breach of fiduciary duty, plaintiffs have not pointed to evidence that would permit a reasonable trier of fact to conclude that Chase assumed a duty to monitor or prevent the transfers that plaintiff Abhyankar initiated. Chase's summary judgment motion will therefore be granted.

The elements of a common law negligence claim are "(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof." Akins v. Glens Falls City Sch. Dist., 53 N.Y.2d 325, 333 (1981). "The existence and scope of an alleged tortfeasor's duty is, in the first instance, a legal question for determination by the court." Di Ponzio v. Riordan, 89 N.Y.2d 578, 583 (1997). Typically, under New York law, a bank does not have an extracontractual duty to its depositors. See, e.g., Hartsko Fin. Servs., LLC v. JPMorgan Chase Bank, N.A., 125 A.D.3d 448, 448 (1st Dep't 2015) (negligence claim "was correctly dismissed because defendant had no duty to plaintiff independent of the contract formed when the account was opened."); Century Bus. Credit Corp. v. N. Fork Bank, 246 A.D.2d 395, 396 (1st Dep't 1998) (dismissing negligence claim asserting that bank had a duty to monitor depositor's activities on behalf of creditors on the basis that such liability would "unreasonably expand banks' orbit of duty."); Calisch Assocs., Inc. v. Manufacturers Hanover Tr. Co., 151 A.D.2d 446, 447 (1st Dep't 1989) (dismissing negligence claim asserting that bank failed to detect fraudulent checks because bank's duties were governed by contract).

Plaintiffs have not pointed to evidence that would permit a reasonable trier of fact to conclude that Chase had a duty to give additional scrutiny to transactions that Abhyankar made on plaintiffs' accounts.  In their moving papers, plaintiffs suggest that the Court should imply a duty on the part of Chase based on Abhyankar's age and her possible "mild cognitive impairment," while also urging that "any medical or mental diagnoses, or lack thereof, should not [be] afforded significant weight, if any."  (Pl. Mem. at 13.)  It also points to informal administrative guidance from the Consumer Financial Protection Bureau about ways financial institutions might monitor elder financial exploitation.  (Id. at 13-15, 17-19.)

However, plaintiffs have not submitted evidence showing that Abhyankar suffers from any diagnosed medical condition that affects her ability to manage her affairs, let alone evidence that Chase was aware of such a condition.  For the reasons explained as to plaintiffs' fiduciary duty claim, plaintiffs have not pointed to evidence that would permit a reasonable trier of fact to conclude that Chase assumed a duty of care to monitor or prevent transfers initiated by Abhyankar.

In addition, the authorities identifying a duty of care extending from a financial institution to an account holder involved acts of fraud in which a third party directly obtained unlawful access to a plaintiff's account, without the plaintiff's knowledge.  See, e.g., Banco Multiple Santa Cruz, S.A. v. Moreno, 888 F. Supp. 2d 356, 367-74 (E.D.N.Y. 2012) (denying summary judgment when financial institution failed to detect purportedly fraudulent signatures on withdrawal slips) (Gleeson, J.); Novak v. Greater N.Y. Sav. Bank, 30 N.Y.2d 136, 141-42 (1972) (bank breached duty of care when permitting withdrawals made using fraudulent signatures and stolen passbook).  Another decision cited by plaintiffs applied Florida law, and concluded on a Rule 12(b)(6) motion that Florida courts would imply a duty of care in

monitoring bank transactions, based on Florida's Adult Protective Services Act statute.  <u>Ginder v. Bank of Am. Corp.</u>, 2015 WL 898595, at *2-4 (M.D. Fla. Mar. 3, 2015).  Plaintiffs do not point to an analogous New York statute.

Even if plaintiffs had demonstrated a duty of care, as noted, each of the transfers to the purported fraudster was initiated by Abhyankar in person at a Chase branch, and her identification was verified prior to the transfers.  (Def. 56.1 ¶ 20; Pl. 56.1 Resp. ¶ 20.)  Plaintiffs' memoranda and Rule 56.1 submissions do not point to evidence that would permit a reasonable trier of fact to conclude that Chase breached a duty to plaintiffs by failing to stop the transfers, which were directed in person by a lawful account owner and subject to identity verification before being processed.

Summary judgment is therefore granted to Chase on plaintiffs' negligence claim.

III.     Summary Judgment Is Granted to Chase on Plaintiffs' Breach of Contract Claim.

Count Two asserts that Chase agreed in a contract formed on June 19, 2017 to inform Behrstock before large withdrawals or transfers were authorized from plaintiffs' accounts, and that Chase breached this agreement by not informing Behrstock of the transfers initiated by Abhyankar.  (Compl't ¶¶ 26-33.)  In moving for summary judgment, Chase urges that the record does not demonstrate the existence of a written or oral agreement between Chase and plaintiffs, and that summary judgment should therefore be granted in its favor.  As noted, in their depositions, Mejia denied that such an agreement was made, and Behrstock testified that she did not recall the parties making such an agreement.

In opposition, plaintiffs state that "Defendant accurately frames the record" but urge that Behrstock's inability to recall the existence of an oral agreement during her deposition "does not necessarily mean her memory cannot be refreshed at trial."  (Opp. Mem. at 8.)

Plaintiffs' speculation that Behrstock's memory might be refreshed at trial is not "admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." Simsbury-Avon Pres., 575 F.3d at 204 (internal citation omitted); see also Powell, 364 F.3d at 84 (a non-movant "must demonstrate more than some metaphysical doubt as to the material facts, and come forward with specific facts showing that there is a genuine issue for trial.") (quotation marks omitted).

Because plaintiffs have not come forward with evidence that would permit a reasonable trier of fact to conclude that Chase agreed to give Behrstock advance notice of large transfers or withdrawals, Chase's summary judgment motion will be granted as to the breach of contract claim.

## IV. Plaintiffs' Claim Under 15 U.S.C. § 1693h Is Voluntarily Dismissed.

Count Four of the Complaint asserts a claim pursuant the Electronic Fund Transfers Act, which renders financial institutions liable to consumers under specific, enumerated circumstances, including failure to honor stop-payment instructions. 15 U.S.C. § 1693h(a)(3). Count Four alleged that Chase failed to follow Behrstock's instruction to stop a pending financial transaction. (Compl't ¶¶ 39-45.) Chase urges that summary judgment should be granted in its favor on this claim because the statute does not cover wire transfers or internal funds transfers. In opposition, plaintiffs "concede that their cause of action for liability pursuant to 15 U.S.C. § 1693h cannot be proved at this time." (Opp. Mem. at 8.)

Count Four is therefore voluntarily dismissed.

CONCLUSION.

Limitations on a person's unfettered right of access to her own funds on deposit with a bank to use when she chooses in the manner she chooses are not to be lightly implied into the relationship between a bank and its customer. But that individual freedom to act may leave a person open to making regrettable decisions or becoming victim to fraud and deceit, as was the case here. To guard against this danger, Article 81 of New York's Mental Hygiene Law permits family members to seek the judicial appointment of a guardian to manage the financial affairs of an adult. This requires a judicial finding by clear and convincing evidence that the adult has an incapacity and is likely to suffer harm because of an inability to manage her property. In the proceeding, the affected adult is entitled to due process of law, including appointed counsel if she cannot afford counsel. Families often arrive at less intrusive arrangements with the consent of the affected adult. Beyond that, the matter is best left to further legislation, or, if appropriate, administrative rulemaking.

Defendant's motion for summary judgment is GRANTED and the plaintiffs' motion is DENIED. The Clerk is directed to terminate the motions (Docket # 69, 78), enter judgment for the defendant and close the case.

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
   July 15, 2020